IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| AARON ANTWAIN TURK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-490-SMD |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

On March 27, 2018, Plaintiff Aaron Antwain Turk ("Turk") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. He alleged disability onset beginning September 19, 2017, which he later amended to January 1, 2018. Turk's application was denied at the initial administrative level. Turk then requested and received a hearing before an Administrative Law Judge ("ALJ"), wherein he received an unfavorable decision denying benefits. The Appeals Council declined review of the ALJ's decision, which consequently became the final decision of the Commissioner of the Social Security Administration ("the Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Turk now appeals the Commissioner's decision under 42 U.S.C. § 405(g).[2] For the reasons that follow, the undersigned AFFIRMS the

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 13); *Def.'s Consent* (Doc. 12).

Commissioner's decision.

## I.     APPLICABLE STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). If the ALJ determines that a claimant does not have a severe impairment at step 2, the inquiry ends and the claimant is determined not disabled. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). The claimant bears the burden to show that he has a severe impairment. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993).

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[3]

---

[3] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.  ADMINISTRATIVE PROCEEDINGS

Turk was 24 years old on his alleged onset date and 26 years old on the date of the ALJ's decision. Tr. 20, 125. He has a high school education and previously worked as a security guard and mail carrier. Tr. 43-44, 176, 183. In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for Turk's disability determination. At step one, the ALJ found that Turk has not engaged in substantial gainful activity since January 1, 2018. Tr. 17. At step two, the ALJ found that Turk suffers from the following medically determinable impairments: "diabetes with reported neuropathy, retinopathy and history of retinal detachment with laser surgery repair; hypertension; obesity, and a history of folliculitis[.]" Tr. 17. The ALJ then determined that Turk "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Turk]

does not have a severe impairment or combination of impairments[.]" Tr. 17. Accordingly, the ALJ found that Turk "has not been under a disability . . . from January 1, 2018, through the date of this decision[.]" Tr. 20.

## IV. ISSUES PRESENTED

Turk argues that the Commissioner's decision should be reversed for two reasons. First, Turk contends that the ALJ erred when he found that he has no severe impairments at step 2. *Turk's Brief* (Doc. 14) pp. 2-8. Second, Turk contends that the ALJ failed to properly evaluate his subjective statements. *Id.* at 8-11. Turk's arguments fail.

## V. ANALYSIS

**1. Substantial evidence supports the ALJ's determination that Turk does not have a severe impairment.**

Turk argues that the ALJ failed to adequately consider and evaluate the medical evidence showing he has more than "trivial" medical impairments. *Id.* at 3. Turk asserts that the ALJ's error was not harmless because the ALJ did not consider the combined impact of his severe and non-severe impairments on his functional capacity. *Id.* at 7.

At step 2, an ALJ must determine whether a claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c). A severe impairment is an impairment that significantly limits a claimant's abilities to do basic work activities[4] and that can be expected to last for a continuous period

---

[4] Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and unusual work situations; and dealing with changes in a routine work setting. SSR 85-28.

of not less than twelve months. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 42 U.S.C. § 423(d)(1)(A). An impairment is not severe when medical or other evidence establish only "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Brady v. Heckler*, 724 F. 2d 914, 920 (11th Cir. 1984); 20 C.F.R. § 404.1521(a). Step 2 is considered a "threshold inquiry" that "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). As such, a claimant's burden in establishing a severe impairment is "mild." *Id.*

Turk's medical records show that he was diagnosed with Type I diabetes, hypertension, and folliculitis. *See, e.g.*, Tr. 279, 342, 357, 372. Despite these diagnoses, Turk's physical examinations revealed no abnormalities that would impede his ability to work, and he reported no subjective symptoms that would otherwise impair his workplace functioning. *See, e.g.*, Tr. 250, 258, 289, 294, 302, 342, 351. Indeed, throughout multiple encounters with his endocrinologist, Turk reported that he was feeling fine. *See, e.g.*, Tr. 250, 258, 289, 294, 302. Similarly, Turk's treatment records from his internal medicine physician show that he had "no associated symptoms" of diabetes or hypertension. Tr. 342, 351. Likewise, Turk reported no symptoms with folliculitis. Tr. 357, 363. Notably, none of Turk's physicians found these conditions debilitating enough to place restrictions on Turk's activities. And, there is no evidence showing that Turk suffered from any side effects of his medications to treat these conditions that would interfere with his work or daily activities.

To be sure, Turk's medical records show two diagnoses that could potentially impede his ability to perform work activities. However, there is no evidence that either condition would be expected to last for more than twelve months. First, Turk developed an ingrown toenail in July 2018 that caused him to experience foot pain. Tr. 336. Follow up records show that the toenail improved by September 2018, and a December 2018 foot exam indicated normal findings. Tr. 312-14, 318-21. Second, in May 2019, Turk was diagnosed with proliferative diabetic retinopathy in both eyes, as well as diabetic tractional retinal detachment in his right eye, which impaired his vision. Tr. 370-73, 410-12. These conditions were surgically corrected one week after he first complained of symptoms. Tr. 375, 377-78, 400-01. And one week after his surgery, Turk was noted to be doing well, and exhibited 20/20 vision on acuity testing. Tr. 392-95.

In finding that Turk was not disabled at step 2, the ALJ also relied on the medical opinion of Dr. Victoria Hogan, a state agency non-examining consultant. Tr. 19-20. In May 2018, Dr. Hogan reviewed Turk's medical records and opined that he had no severe impairments. Tr. 52-58. Although Dr. Hogan's opinion predates Turk's ingrown toenail and his diabetic retinopathy/retinal detachment, the ALJ nonetheless found the opinion persuasive because it was consistent with the longitudinal record. Tr. 19. In reaching this conclusion, the ALJ explicitly discussed Turk's medical evidence postdating Dr. Hogan's opinion. Tr. 19-20. The ALJ concluded that Turk's subsequent records exhibited normal findings. In support, the ALJ pointed to a May 2019 record wherein Turk's diabetes was "noted to be stable with no associated symptoms[.]" Tr. 19-20. He also noted that Turk

reported no foot pain and exhibited normal toes and feet in April 2019 (approximately ten months after Turk was diagnosed with an ingrown toenail). Tr. 19. Similarly, the ALJ noted that, leading up to Turk's May 2019 diagnosis of diabetic retinopathy/retinal detachment, he reported no blurry vision or eye problems. Tr. 20. And, the ALJ noted that a few weeks after undergoing surgery for the eye condition, Turk's vision improved and he exhibited 20/20 vision. Tr. 20.

Substantial evidence supports the ALJ's conclusion that Turk has no severe impairments that could be expected to persist for at least twelve months. As noted above, Turk's medical records, which are generated from several medical sources, show that he has not reported any symptoms from his medically determinable impairments that would interfere with his ability to perform basic work functions. Again and again, Turk's medical records indicate that he was fine and experiencing no symptoms associated with his impairments. Other than Turk's testimony at the hearing, there is no indication that Turk's impairments would impede his ability to work.

Further, even if Turk's diabetic retinopathy/retinal detachment could be assumed to interfere with his ability to perform basic work activities, Turk has not shown that the condition has persisted or is likely to persist for more than 12 months. Indeed, prior to the surgery, Turk did not report any problems with his vision or his eyes. *See, e.g.*, Tr. 250, 258, 268, 275, 289, 294, 302. Within two months of the surgery, Turk's records show that he had 20/20 vision. Tr. 392. Turk has pointed to no evidence—and the undersigned has found none in the record—suggesting that this condition is likely to persist for at least 12

months. Thus, Turk's diabetic retinopathy/retinal detachment is not a severe impairment. *See Craig M. v. Berryhill*, 2019 WL 2648029, at *9 (D. Minn. June 10, 2019) (finding that there was substantial evidence to support the ALJ's conclusion that the claimant's retinopathy was not a severe impairment because the claimant did not identify any record, either before or after the ALJ's decision, to support the argument that his retinopathy was likely to persist for 12 continuous months). The same can be said for Turk's ingrown toenail.

Because the burden at step 2 is minimal, it is unusual for an ALJ to find a claimant not disabled at that juncture. *See Morris v. Astrue*, 2008 WL 899181, at *1 (M.D. Fla. Mar. 29, 2008) (noting that "[i]t is indeed an unusual case where a plaintiff has diagnosis of and record of treatment for coronary artery disease but where such an impairment has been found not to be 'severe' at Step 2"). However, the severity of a disability is measured not by its deviation from the norm, but "in terms of its effect upon ability to work." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Here, Turk has not met his burden of showing that his medical impairments significantly limit his ability to work and that the impairments can be expected to last for a continuous period of not less than twelve months. As such, substantial evidence supports the ALJ's decision to find that Turk is not disabled at step 2.[5]

---

[5] As part of his argument, Turk contends that the ALJ erred in finding Dr. Hogan's opinion persuasive because the opinion was formed without the benefit of Turk's complete medical records. *Turk's Brief* (Doc. 14) pp. 5-6. Turk asserts that the ALJ should have ordered a consultative examination to further develop the record. *Id.* at 6-8.

To the extent Turk is arguing that the ALJ erred by finding Dr. Hogan's opinion persuasive, the argument

**2. Substantial evidence supports the ALJ's discount of Turk's subjective symptoms.**

A claimant can establish disability through personal testimony about pain or other symptoms. *Marksuke v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). A claimant attempting to establish disability through his own testimony of subjective symptoms must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

If the ALJ determines that a claimant has a medically determinable impairment that could reasonably be expected to produce his reported symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine if they limit his capacity to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider a variety of factors, including objective medical evidence, treatment history,

---

fails. Without Dr. Hogan's opinion, Turk's medical records provide substantial evidence to support the ALJ's conclusion that Turk is not disabled. And, Turk has not shown how the evidence postdating Dr. Hogan's opinion were inconsistent with or would have altered her report.

Additionally, the ALJ was not required to further develop the record, particularly considering Turk was represented by counsel at the hearing. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (noting that there is a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts" when a claimant is unrepresented). The record shows that the ALJ met his basic obligations to develop Turk's complete medical history; therefore, the undersigned finds that he did not err in failing to order a consultative examination.

response to medication and other treatments, sources of pain relief, and the claimant's daily activities. 20 C.F.R. § 404.1529(c)(1)-(4). If an ALJ rejects a claimant's subjective testimony regarding his symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. These reasons must "be consistent with and supported by the evidence[.]" SSR 16-3p, at *9.

At the hearing, Turk testified that he is unable to work due to vision problems, sensitivity to light, numbness in his feet and hands, and high spikes in his blood sugar levels. Tr. 34-35. He testified that he is able to exercise by doing 10-15 pushups and walking inside his home. Tr. 36-37. He further testified that he plans to go to school to study HVAC technology so he can "do like a side job." Tr. 37. The ALJ concluded that Turk's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but found that his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 18-19.

The undersigned finds that the ALJ properly discounted Turk's subjective symptom testimony. As for the objective medical evidence, the ALJ noted multiple occasions wherein Turk reported to his endocrinologist that he was doing fine and denied all symptoms, including tingling and numbness in his hands and feet, skin disorders, blurry or worsening vision, weakness, and foot pain. Tr. 19-20. Further, the ALJ noted that, during his examinations, Turk presented with normal gait, balance and stance, and intact strength and sensation. Tr. 19-20. The ALJ's explanation of this evidence provided sufficient

reasons for discounting Turk's subjective allegations. Therefore, the ALJ did not err in discounting Turk's subjective symptom testimony.

## V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 7th day of March, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE